UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                       )
MICHAEL CAMELO, as parent and          )
next friend of P.C., et al.,           )
                                       )
          Plaintiffs,                  )
                                       )
     v.                                )     C.A. No. 19-660 WES
                                       )
BRISTOL-WARREN REGIONAL SCHOOL         )
DISTRICT, et al.,                      )
                                       )
          Defendants.                  )
_____)

## MEMORANDUM AND ORDER

Before the Court is Defendants' Motion for Judgment on the Pleadings, ECF No. 11.  For the reasons set forth below, Defendants' Motion is GRANTED IN PART and DENIED IN PART.

I.   BACKGROUND[1]

Plaintiffs bring this action on behalf of P.C., their minor son.  Compl. ¶ 1, ECF No. 1-1.  During the events at issue, P.C. was an eighth-grade student at Kickemuit Middle School, part of Defendant Bristol-Warren Regional School District.  Defendants Mario Andrade and Christine Homen were the superintendent of the

_____

[1] For purposes of this Motion, the Court accepts as true the factual allegations in Plaintiffs' Complaint, ECF No. 1-1.  See Shay v. Walters, 702 F.3d 76, 79 (1st Cir. 2012) (citation omitted).

school district and principal of the school, respectively.[2]  Id.
¶¶ 4-5, 20.

The controversy at the heart of this case began in late April
of 2019, when P.C. was removed from school "pending an
investigation into behaviors . . . ."  Id. ¶ 7.  Andrade notified
Plaintiffs of the removal through a letter.  Id. ¶ 8.  At a
subsequent meeting, Andrade and Homen told Plaintiffs that P.C.
had been removed because other students had made statements that
P.C. had pulled his pants down and exposed his penis to his algebra
class.  See id. ¶ 9.  Defendants did not provide those statements
to Plaintiffs during the meeting or at any other time.  See id.
¶ 10.  The only document substantiating the allegations was a
"vague list of allegations" that did not list the accusers.  Id.
¶ 22.  The Complaint implies that Plaintiffs and their son have
always denied the allegations against him.  See id. ¶¶ 15, 19, 21,
48, 52.

In the weeks following the meeting, the school system
investigated the alleged incident.  See id. ¶¶ 11-14.  P.C. and
his parents met with an investigator from the school district to

---

[2] The Complaint lists both Homen and Andrade as the principal
of the school, see Compl. ¶¶ 4-5, but the parties apparently agree
that Andrade was in fact the superintendent of the school system
at the time of the events in question, see Mem. Supp. Mot. J.
Pleadings 1, ECF No. ECF No. 11-1; Pls.' Opp'n to Defs.' Mot. J.
Pleadings 2, ECF No. 17-1.

answer questions about the allegations against P.C.; again, they
did not receive documentation of the allegations.   Id. ¶ 14.
Attorneys for the school system, with Andrade's authorization,
offered a restorative justice plan to P.C.  Id. ¶ 16.  The written
plan listed students who were allegedly in fear of P.C.   Id.
Andrade offered to have P.C. return to school with conditions
including "no contact orders, change of academic teams and a rigid
program sponsored by the Day One, the state's premiere sexual
trauma center."  Id.

It appears that Plaintiffs rejected this offer and instead
sought review of the removal through an expedited hearing with the
Rhode Island Department of Education ("RIDE").  See id. ¶¶ 20-21.
However, the Complaint implies that Plaintiffs abandoned their
appeal because "RIDE does not deal with substantive and procedural
due process issues," a decision would not be issued before the end
of the school year, and Plaintiffs were told that P.C.'s grades
and school record would be unblemished by the incident.[3]  Id. ¶ 21.

---

[3] Defendants rely heavily – quoting eight entire paragraphs –
on two written decisions from the Rhode Island Department of
Education ("RIDE"), one concerning P.C. and one concerning another
student.  See Mem. Supp. Mot. J. Pleadings 2-4, 15.  Of course, a
motion for judgment on the pleadings is generally limited to the
pleadings.  See Kando v. R.I. State Bd. of Elections, 880 F.3d 53,
58 (1st Cir. 2018).  Asserting that this Court may nonetheless
consider the RIDE decisions, Defendants cite to a case involving
res judicata, but make no argument that the doctrine applies here.
See Mem. Supp. Mot. J. Pleadings 2-3 n.2 (citing In Re Colonial
Mortgage Bankers Corp., 324 F.3d 12, 15 (1st Cir. 2003)).
Defendants also note that "courts have made narrow exceptions for

P.C. remained suspended from school through the end of his eighth-grade year.  Id. ¶ 27.

After Plaintiffs filed suit in the Providence County Superior Court, the case was removed to this Court.  See Defs.' Notice of Removal, ECF No. 1.  Their Complaint, ECF No. 1-1, lists twelve causes of action, including various forms of negligence, infliction of emotional distress, denial of freedom of expression, violation of equal protection, violation of procedural due process, and conspiracy to violate civil rights.  Defendants later filed the instant Motion for Judgment on the Pleadings, ECF No. 11.

II.  DISCUSSION

When considering a motion for judgment on the pleadings, the Court "take[s] the well-pleaded facts and the reasonable inferences therefrom in the light most favorable to the nonmovant . . . ."  Kando v. R.I. State Bd. of Elections, 880 F.3d 53, 58 (1st Cir. 2018) (citation omitted).  Facts drawn from documents "fairly incorporated" in the pleadings and facts "susceptible to judicial notice" may be considered.  Kando, 880

---

documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiff's claim; or for documents sufficiently referred to in the complaint."  Id. (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).  However, Defendants do not identify which of these bases is applicable.  Id.  The Court therefore will not consider the decisions.  See Johnson v. Boston Pub. Schools, 1:15-CV-10026-ADB, 2018 WL 1188747, at *1 (D. Mass. Mar. 7, 2018).

F.3d at 58 (citation omitted).  The motion should be granted only if "the properly considered facts conclusively establish that the movant is entitled to the relief sought."  Id. (citation omitted).

Defendants argue that many of the substantive claims are insufficiently pled, that the claims against the three individual Defendants should be rejected entirely, and that the school district and school committee are improper defendants.  See Mem. Supp. Mot. J. Pleadings 5-19, ECF No. 11-1.

1.   Claim-Specific Arguments

a.   Procedural Due Process

Count XI, brought pursuant to 42 U.S.C. § 1983, alleges that Defendants violated P.C.'s constitutional right to due process by suspending him without sufficient notice or opportunity to be heard.  Compl. ¶ 77.  Defendants argue - relying in part on the RIDE decisions, which fall outside the scope of this motion, see supra note 3 - that "P.C. has been given ample due process."  Mem. Supp. Mot. J. Pleadings 15.

Due process requires that parties facing a "deprivation of life, liberty, or property by adjudication" be given "notice reasonably calculated" to "afford them the opportunity to present their objections" and "of such nature as reasonably to convey the required information."  Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313-314 (1950) (citations omitted).  Students possess a property interest in the benefits of their education and

5

a liberty interest in their reputation, both of which are implicated by school suspensions. See Goss v. Lopez, 419 U.S. 565, 576 (1975). Therefore, "students facing suspension . . . must be given some kind of notice and afforded some kind of hearing." Id. at 579. "[T]he timing and content of the notice and the nature of the hearing will depend on appropriate accommodation of the competing interests involved." Id. (citations omitted). More specifically, "due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." Id. at 581. Without a sufficient opportunity to assess the evidence, a student facing suspension cannot fully respond to the allegations or explain and defend the conduct at issue. See Pomeroy v. Ashburnham Westminster Regional Sch. Dist., 410 F. Supp. 2d 7, 16 (D. Mass. 2006). The Supreme Court has not addressed the constitutional requirements for suspensions longer than ten days. See Johnson v. Collins, 233 F. Supp. 2d 241, 248 (D.N.H. 2002).

Plaintiffs allege that P.C.'s due process rights were violated because he did not receive written documentation of the statements against him, the names of his accusers, the time and date of the conduct in question, or any written findings of fact supporting his suspension. See Compl. ¶¶ 77, 79, 81-82. In sum,

6

the Complaint alleges that the evidence provided to P.C. amounted
to little more than the bare accusation that he pulled down his
pants during class.  See id. ¶¶ 7-10, 14-16.  School suspensions
do not necessitate "the procedural requirements of a common law
criminal trial."  Gorman v. U. of Rhode Island, 837 F.2d 7, 16
(1st Cir. 1988).  However, because P.C. denied the allegations,
the school was required to provide an "explanation of the evidence"
against him.  See Goss, 419 U.S. at 581.  Given the length of the
suspension at issue, a one-sentence description of the alleged
offense was insufficient.  See id. at 584 (stating that suspensions
longer than ten days "may require more formal procedures"); McGrath
v. Town of Sandwich, 22 F. Supp. 3d 58, 66 (D. Mass. 2014) ("[A]
reasonable  official  would  have  understood  that  categorically
declining to disclose the content of witness statements or a report
of the incident violated" the student's "right to be informed of
the evidence against him . . . .").  Thus, the Complaint plausibly
alleges  a  violation  of  the  P.C.'s  right  to  be  informed  of  the
evidence against him.

     Moreover,  affording  all  reasonable  inferences  in  favor  of
Plaintiffs,  the  Complaint  alleges  that  P.C.  did  not  receive  an
opportunity to present his side of the story until he met with a
school representative on May 16, seventeen days after his removal
from school.  See Compl. ¶¶ 7-9, 14, 79, 83.  This delay violates
Goss's requirement that notice and hearing occur prior to removal,

7

or, where the student's "presence poses a continuing danger to persons or property or an ongoing threat of disrupting the academic process[,]" "as soon as practicable" following removal.  419 U.S. at 582-83.   Lastly, the Complaint alleges that the school eventually determined that the allegation that P.C. pulled down his pants during class was false, but the school continued to enforce P.C.'s suspension without providing an alternate basis. See Compl. ¶¶ 15-16.   If true, this conduct would violate the requirement that P.C. receive "oral or written notice of the charges against him . . . ."  Goss, 419 U.S. at 581.

As such, the Court concludes that Plaintiffs have adequately pled a violation of procedural due process.   However, not all counts of the Complaint fare so well.

> b.   Freedom of Expression

Plaintiffs also claim that Defendants deprived P.C. of his right to free speech under the United States and Rhode Island Constitutions by "penalizing [his] grades, filing egregious sexual charges against him, denying [him] his graduation and [the] opportunity to finish his baseball season," and "compell[ing] [him] to express ideas" that were not his own.  Compl. ¶¶ 58, 64; see generally, id. ¶¶ 57-68.  However, neither the Complaint nor Plaintiffs' other filings indicate any ways in which P.C.'s expressive conduct was either restricted or compelled.  Moreover, Plaintiffs make no reasonable argument, and point to no case law,

for the proposition that activities such as middle school graduation or sports participation implicate freedom of expression. Therefore, the Court enters judgment for Defendants on Counts XIII and IX.

> c.   Equal Protection

In Count X, Plaintiffs bring a similarly vague claim that the school violated P.C.'s equal protection rights under the United States and Rhode Island Constitutions. Id. ¶¶ 69-75. They assert that the school treated P.C. "differently than similarly situated eighth graders" by "denigrating [his] rights, penalizing his grades, trumping up charges against him, denying his graduation, [] denying him the opportunity to complete his baseball season," and "not informing him of the fact that they knew the heinous allegations against him were unfounded." Id. ¶ 70.

Because the Complaint does not allege that P.C. is a member of a protected class, Plaintiffs appear to be advancing a "class of one" theory. See Freeman v. Town of Hudson, 714 F.3d 29, 38 (1st Cir. 2013). Under this theory, a plaintiff must show that he or she was "intentionally treated differently from others similarly situated and that there [was] no rational basis for the difference in treatment." Id. (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)). The comparators must be "similarly situated in all aspects relevant to the challenged government action." Zell v. Ricci, 957 F.3d 1, 13 (1st Cir. 2020)

(citation and quotations omitted).   Further, the plaintiff must "identify and relate specific instances" where such similarly situated persons "were treated differently."   Cordi-Allen v. Conlon, 494 F.3d 245, 250-51 (1st Cir. 2007) (citation and quotations omitted).

Here, the Complaint states that P.C. was treated differently than similarly situated eighth graders, but it does not identify those individuals or explain their likeness to P.C.   This conclusory allegation fails to state a plausible claim on which relief may be granted.   See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).   Judgment therefore must enter for Defendants on Count X.

d.   Conspiracy to Violate Civil Rights

In Count XII, Plaintiffs allege that Defendants conspired to deny P.C. his civil rights to freedom of speech and due process through their false allegations against him.  Compl. ¶¶ 85-87.  As the basis for this claim, the Complaint cites 42 U.S.C. § 1985, which proscribes, inter alia, conspiracies to "depriv[e] persons of rights or privileges."   42 U.S.C. § 1985(3); Compl. ¶¶ 85-87.

The elements of a claim under § 1985(3) are "(1) a conspiracy, (2) a conspiratorial purpose to deprive a person or persons, directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws, (3) an overt act in furtherance of the conspiracy, and (4) either (a) an injury to

person or property, or (b) a deprivation of a constitutionally protected right or privilege." Cardillo v. Cardillo, 360 F. Supp. 2d 402, 411 (D.R.I. 2005) (citing Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)).  In addition, the plaintiff "must allege that the conduct complained of resulted from an invidiously discriminatory class-based animus."  Aulson, 83 F.3d at 4.

Here, Plaintiffs do not allege that P.C. was a member of a class, that he was conspired against because of that membership, or that the criteria defining that class were invidious. Therefore, judgment shall enter for Defendants on Count XII.

e.   Infliction of Emotional Distress

Next, Plaintiffs allege negligent infliction of emotional distress (Count IV) and intentional infliction of emotional distress (Count VII).  Compl. ¶¶ 43-45, 54-56.  However, Rhode Island law requires that a plaintiff suffer some physical symptomology to recover for either of these causes of action.  See Reilly v. United States, 547 A.2d 894, 898-99 & n.3 (R.I. 1988) (citations omitted).  Plaintiffs concede that "the physical symptomology requirement is not explicitly set forth" in the Complaint.  Pls.' Opp'n to Defs.' Mot. J. Pleadings 11, ECF No. 17-1.  Thus, Count IV and VII fail to state a claim on which relief can be granted, and judgment must enter for Defendants.

11

f.   Gross Negligence

Defendants argue that Count III must fall because Rhode Island does not recognize different degrees of negligence.  See Mem. Supp. Mot. J. Pleadings 19; see also Labree v. Major, 306 A.2d 808, 816 (R.I. 1973) ("[W]e find that this state has never adopted the doctrine of degrees of negligence." (citation omitted)).  However, as referenced by Plaintiffs (who mistakenly attribute the quotation to a different case), see Pls.' Opp'n to Defs.' Mot. J. Pleadings, this Court on two occasions has applied the concept of gross negligence.  See Petro v. Town of W. Warwick ex rel. Moore, 889 F. Supp. 2d 292, 333-36 (D.R.I. 2012) (holding that ordinary negligence was barred by R.I. Gen. Laws § 9-1-27 but that claim of gross negligence was not); Leite v. City of Providence, 463 F. Supp. 585, 591 (D.R.I. 1978) (applying gross negligence doctrine to § 1983 claim).  Here, as discussed below, Defendants assert the affirmative defense of the Coverdell Teacher Protection Act, which precludes liability for certain negligence claims, but not claims of "gross negligence" or "reckless misconduct . . . ."  20 U.S.C. § 7946(a).  Thus, while Rhode Island generally does not recognize degrees of negligence, the federal law raised by Defendants does. Judgment on the claim of gross negligence is therefore not warranted at this stage.

12

2.    Defendant-Specific Objections

Six claims have been struck from the list, and six others remain:  Count I (negligence), Count II (respondeat superior), Count III (gross negligence), Count V (negligent hiring and training), Count VI (negligent supervision), and Count XI (procedural due process).  The Court now addresses Defendants' more general contentions.

a.    Individual Defendants

Defendants make various arguments why the Complaint fails to state any claims against the individual Defendants (Andrade, Homen, and Erin Schofield).  Mem. Supp. Mot. J. Pleadings 5-9.

To begin with, the Complaint makes out no claims against Schofield.  The only mention of any action taken by her is a vague assertion that she communicated with Andrade in some assumedly nefarious manner.  Compl. ¶¶ 14, 20.  This allegation cannot form the basis for liability on any of the remaining counts.  Thus, the Court agrees with Defendants that judgment must enter in favor of Schofield in her individual capacity on all counts.[4]  Mem. Supp. Mot. J. Pleadings 5-6.

---

[4] To the extent that the Complaint may seek to also sue Schofield solely in her official capacity as the chairwoman of the Bristol-Warren School Committee, see Compl. ¶ 20, the school committee is already sued through its treasurer, and any allegations against Schofield in her official capacity would be duplicative.

Homen and Andrade advance four arguments for why they too should be dismissed in their individual capacities. Mem. Supp. Mot. J. Pleadings 5-9. First, they argue that "[n]one of the twelve Counts is specific as to any actionable wrongdoing by any individual Defendant." Id. at 6. However, the Complaint does point to specific actions taken by Andrade and Homen. See Compl. ¶ 7 ("[P.C.] was removed . . . 'pending an investigation into behaviors' per a letter by . . . Andrade."); id. ¶ 8 ("Andrade wrote a letter to [Plaintiffs] that 'it is necessary to remove your son from school while the investigation is ongoing.'"); id. ¶ 9 ("[Plaintiffs] met with . . . Andrade and . . . Homen. . . . Homen claimed she had 'many statements' from kids in an algebra class that Parker had pulled his pants down and exposed his penis to the class."); id. ¶ 16 ("Andrade authorized the BWRSD Attorneys to offer what he referred to as restorative justice for Parker and his 'victims.'"). Moreover, the Complaint connects those actions with sufficient if not abundant specificity to the allegations that P.C. suffered a deprivation of his procedural due process rights and other tortious conduct, thus interfering with his schooling and creating "a large cloud over him which is humiliating and debilitating . . . ." Id. ¶ 10, 16-17, 21-23, 27. Defendants' accusation that the Complaint lacks sufficient specificity provides no claim-by-claim analysis, so there is no need for the

14

Court to further parse this argument.  <u>See</u> Mem. Supp. Mot. J.
Pleadings 6.

Second, Andrade and Homen argue that the claims against them
in their official capacities should be dismissed because they are
more properly brought against the municipalities.  <u>See</u> <u>id.</u> at 6-7
& n.4 ("In Rhode Island, 'a suit brought against a municipal
official . . . is a suit against the municipality.'" (quoting <u>Town</u>
<u>of Cumberland v. Vella-Wilkinson</u>, C.A. No. PC 10-2096, 2012 R.I.
Super. LEXIS 120, at *61 (Aug. 1, 2012)).  However, "[a]s long as
the government entity receives notice and an opportunity to
respond, an official-capacity suit is, in all respects other than
name, to be treated as a suit against the entity."  <u>Kentucky v.</u>
<u>Graham</u>, 473 U.S. 159, 166 (1985) (citation omitted).  As discussed
below, the consequences of the fact that the school district serves
two municipalities are unresolved (and unbriefed), so it is unclear
which entity would properly take the place of the individual
Defendants.  Therefore, the Court declines to enter judgment for
Andrade and Homen in their official capacities at this time.

Third, Homen and Andrade assert that they are entitled to
qualified immunity.  Mem. Supp. Mot. J. Pleadings 7-8.  Two
categories of claims remain:  the due process claim brought under
§ 1983, and the negligence-related claims brought under Rhode
Island common law.  In § 1983 actions, qualified immunity shields
government officials performing discretionary functions from

15

liability in § 1983 actions, so long as their conduct does not violate any statutory or constitutional right "of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).  Here, affording all reasonable inferences to Plaintiff, the Court concludes (as discussed above) that the Complaint makes out a violation of the right to due process with regards to school suspensions, as clearly established by the Supreme Court in Goss, 419 U.S. at 579.  Thus, the doctrine of qualified immunity cannot resolve the due process claim at this stage of the proceedings.[5]

With regards to the state law negligence claims, qualified immunity applies only to the claims brought against Homen and Andrade in their individual capacities, not their official

---

[5] It is unclear whether Plaintiffs allege municipal liability for the due process allegations, see Compl. ¶¶ 76-84, and Defendants make no argument regarding that issue.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978) ("[A] local government may not be sued under § 1983" unless the injury is caused by the "government's policy or custom . . . ."); Kelley v. LaForce, 288 F.3d 1, 9 (1st Cir. 2002) ("Government policy or custom . . . may be established by 'a single decision by municipal policymakers under appropriate circumstances.'" (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986)).

capacities.[6]  See J.R. v. Gloria, 593 F.3d 73, 82 (1st Cir. 2010)

(citing Hatch v. Town of Middletown, 311 F.3d 83, 90 (1st Cir.

2002)); Hopkins v. Rhode Island, 491 F. Supp. 2d 266, 275-76

(D.R.I. 2007).  Because the individual capacity negligence claims

do not allege a violation of a clearly established constitutional

right, those claims cannot survive.

Fourth, Andrade and Homen claim they are protected from suit

under 20 U.S.C. § 7946, the Coverdell Teacher Protection Act.  Mem.

Supp. Mot. J. Pleadings 8-9.  Under the Rule 12(b)(6) standard, a

defendant can prevail on an affirmative defense such as the

Coverdell Act only where "(i) the facts establishing the defense

are definitively ascertainable from the complaint and the other

allowable sources of information, and (ii) those facts suffice to

establish the affirmative defense with certitude."  Nisselson v.

Lernout, 469 F.3d 143, 150 (1st Cir. 2006) (citation and quotations

omitted); see also Zell v. Ricci, 957 F.3d 1, 18 n.19 (1st Cir.

2020) (noting that Coverdell Act is an affirmative defense, not an

element of the cause of action).

The Coverdell Act provides that teachers, principals, and

administrators    are    protected    from    liability    in    certain

---

[6] Defendants do not argue that the negligence-related claims
against the institutional and official-capacity Defendants are
barred by the public duty doctrine.  See J.R. v. Gloria, 593 F.3d
73, 81 (1st Cir. 2010) (citing Kuzniar v. Keach, 709 A.2d 1050,
1053 (R.I. 1998), and R.I. Gen. Laws § 9-31-1).

circumstances.  See 20 U.S.C. § 7943(6)(a); 20 U.S.C. § 7946.  To

qualify for protection, the conduct must have been "carried out in

conformity" with the applicable rules and regulations, and the

harm must not have been caused by "gross negligence, reckless

misconduct, or a conscious, flagrant indifference to the rights"

of the harmed individual.  Id. § 7946(a)(2), (4).  The Complaint

alleges    that    Defendants    acted    with    gross    negligence    and

recklessness    and    that    they    violated    applicable    rules    and

regulations.  Compl. ¶¶ 33, 41, 71, 77-83.  Thus, judgment on the

pleadings based on the Coverdell Act would be inappropriate.

> b.    Whether the School District and School Committee
>        Are Proper Defendants

Finally, Defendants argue that the Bristol-Warren Regional

School District and the Bristol-Warren Regional School Committee

are improper defendants and that the municipalities of Bristol and

Warren would instead be the proper defendants.  Mem. Supp. Mot. J.

Pleadings 9.   In response, Plaintiffs seek to add the Town of

Bristol and the Town of Warren as defendants.   Pls.' Opp'n to

Defs.' Mot. J. Pleadings 10.

This Court and the Rhode Island Supreme Court have held that

cases   should   be   brought   against   municipalities,   not   their

subdivisions.  See Mullen v. Tiverton Sch. Dist., CV 20-179-JJM-

LDA, 2020 WL 5803233, at *8 (D.R.I. Sept. 29, 2020) (substituting

municipality for school committee and school district); Peters v.

Jim Walter Door Sales of Tampa, Inc., 525 A.2d 46, 47 (R.I. 1987) ("Because the school committee is a department of the city of East Providence, the city itself and not the department is the proper party defendant.").  However, Defendants make no argument and cite no cases addressing the fact that the school district and school committee in this case serve two distinct municipalities.  See Mem. Supp. Mot. J. Pleadings 9; Reply to Pls.' Obj. to Defs.' Mot. J. Pleadings ("Reply") 2, ECF No. 18.

This purported defect will not bar Plaintiffs from pursuing relief from one governmental entity or another, as the municipalities are sufficiently on notice of the claims at issue and their potential liability.  See Graham, 473 U.S. at 166; Banks v. Slay, 875 F.3d 876, 881 (8th Cir. 2017) ("[N]aming of the County in the heading of the [official-capacity] complaint was . . . redundant." (quotations and citation omitted)).  Furthermore, without briefing on issue of a dual-municipality school district, the Court concludes that it is premature to decide whether the municipalities should be substituted for the school committee and school district.

III. CONCLUSION

For the reasons stated above, Defendants' Motion for Judgment on the Pleadings, ECF No. 11, is GRANTED as to Counts IV, VII, VIII, IX, X, and XII; GRANTED as to all claims against Erin Schofield; GRANTED as to Counts I, II, III, V, and VI as pled

19

against Homen and Andrade in their individual capacities; and

DENIED as to all other claims.

IT IS SO ORDERED.

_WEsmith_

_____
William E. Smith
District Judge
Date:  March 12, 2021